UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IDELLA M. ABRAM,

                              Plaintiff,

          v.                                          **DECISION AND ORDER**
                                                          04-CV-441S

CITY OF BUFFALO,

                              Defendant.


# I.  INTRODUCTION

Presently, before this Court is Defendant's Motion to Dismiss Plaintiff's Complaint and for Sanctions pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, (Docket No. 55), and Plaintiff's Motion for Leave to File an Amended Complaint. (Docket No. 68). For the reasons discussed below, both motions are denied.  The case is referred back to the Honorable Hugh B. Scott, United States Magistrate Judge, for a new expedited Scheduling Order.  Further, this Court warns Plaintiff that failure to comply with the new expedited Scheduling Order may result in dismissal.

# II.  BACKGROUND

## A.     Facts

Plaintiff is a black female who began working for the City of Buffalo as a police officer on January 28, 1985. (Docket No. 1, ¶ 4.)  At some unspecified point, Plaintiff learned that her married female co-worker was having a sexual relationship with David

Andrews, a City of Buffalo "Inspector." (Id., ¶ 19).   In response to her co-worker's statements, Plaintiff stated to the co-worker that adultery is not only morally wrong, but that it also constitutes a misdemeanor under New York State Penal Law. (Id.). Plaintiff's co-worker became upset and indicated that she was going to discuss the matter with Defendant Andrews. (Id.).   Plaintiff alleges that within a week or two, she "began to be brought up on many departmental charges by Inspector Andrews," as well as Defendants Guy Zagara and Chris Giradina, who are supervised by Andrews (Id.).

Plaintiff also alleges that she was denied medical benefits for a number of job-related injuries in violation of her due process rights.[1]  Specifically, Plaintiff alleges that on or about July 1987, she broke her arm in the performance of her duties; that on or about July 4, 1989, she was in a car accident; and that on or about January 10, 1994, she suffered an injury while attempting to restrain a suspect. (Docket No. 68, ¶¶ 23-25). Further, Plaintiff alleges that in or about February 1999, she suffered a serious knee injury, (Id., ¶ 26), and was "force[d] to accept a disability retirement that was the result of Defendant's "animus towards Plaintiff because of her race and gender." (Id., ¶ 27).  Plaintiff alleges that she suffered another injury, (Id., ¶ 29), and was re-assigned to a different location in 2001. (Id., ¶ 30).  Plaintiff alleges that she suffered another serious injury in 2002, for which she was maliciously denied "injury on duty status," (Id., ¶ 31), and further alleges that she suffered a serious injury in 2003, for which she was denied a leave of absence while similarly situated white male officers were granted leaves of absence. (Id., ¶ 36).  Plaintiff alleges she was suspended "because of her race, age, religion, and

---

[1]Plaintiff sets forth these allegations in her proposed amended complaint, which outlines the experience with her former employer, the Buffalo Police Department.

gender," on February 13, 2004,  (Id., ¶ 38).  Plaintiff was terminated on March 24, 2005, allegedly as the result of Defendant's efforts to "frustrate and humiliate Plaintiff's retirement plans and benefits and leaving Plaintiff without medical benefits during her retirement." (Id., ¶ 39).

**B.    Procedural History**

On June 14, 2004, Plaintiff, Idella M. Abram, commenced this case, *pro se*, by filing a Complaint in the United States District Court for the Western District of New York. (Docket No. 1).   Plaintiff originally named the City of Buffalo, Lieutenant Guy Zagara, Inspector David Andrews, and Captain Christine Giradina as defendants.  Plaintiff brings this action alleging discrimination on the basis of race, religion, and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"), and the Americans with Disability Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA").

On September 28, 2004, the named Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 4). This Court granted the motion in part – dismissing Plaintiff's ADA claim and terminating Zagara, Andrews, and Giradina – and denied the motion in part – allowing the Title VII and ADEA claims to remain. (Docket No. 16).  Presently, the City of Buffalo is the sole defendant and the Title VII claim as well as the ADEA claim are the only remaining causes of action.

On April 11, 2006, counsel was appointed for Plaintiff. (Docket No. 27).  However, appointed counsel withdrew from the case on January 30, 2007, at which time Plaintiff resumed her *pro se* status. (Docket No. 41).

On December 13, 2007, Defendant served Plaintiff with: (1) Defendant's First Request for Production and Inspection of Documents and Things to Plaintiff; (2) Defendant's First Set of Interrogatories to Plaintiff; and (3) Notice of Deposition. (Docket No. 54).   Pursuant to the Federal Rules of Civil Procedure and Local Rule 7.1, the discovery requests were due January 14, 2008.  Plaintiff did not comply with the deadline. In a letter dated January 22, 2008, Defendant informed Plaintiff that her responses were overdue and requested that Plaintiff contact Defendant immediately to make alternative arrangements. (Docket No. 55-2, ¶14).  Plaintiff never responded to the letter.  Defendant alleges it made numerous attempts to contact Plaintiff by phone, but Plaintiff never responded. (Id., ¶16).  On January 31, 2008, Defendant filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 37(d) for Plaintiff's failure to attend her deposition and failure to serve answers to interrogatories. (Docket No. 55).

On May 30, 2008, Anthony L. Pendergrass, Esq. filed a notice of appearance on behalf of Plaintiff. (Docket No. 60).   On August 16, 2008, more than four years after Plaintiff filed her original complaint, Plaintiff filed a Motion for Leave to Amend the Complaint. (Docket No. 68).   Plaintiff's proposed, amended complaint adds twenty additional causes of action and five new Defendants. (Id.).

Plaintiff also commenced administrative actions, predicated on the same set of facts.  For example, in May 2003, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race, sex, religion, and age, spanning from September 30, 2002 to May 1, 2003. (Docket No. 1).  The EEOC dismissed Plaintiff's claim, noting that, "[t]he evidence fails to indicate that a violation of the law occurred and it is not likely that additional investigation will result in our

4

finding a violation." (Id.)   The EEOC further noted that, in regards to the religious discrimination claim, Plaintiff stated that she was not even aware of the religion of anyone else with whom Plaintiff worked. (Id.)

Plaintiff also initiated two actions in the New York State Division of Human Rights (NYSDHR) in 2004 and in 2006.   On September 23, 2004, Plaintiff filed a Complaint alleging that she was denied her injury-on-duty status. (Docket No. 77-4).   Lindy Korn, Esq. currently represents Plaintiff on the charge, which is still pending.   Additionally, on March 6, 2006, Plaintiff filed a Complaint with the NYSDHR, alleging discrimination and retaliation for her prior charges and the denial of medical benefits and leave of absence. (Docket No. 77-5).   On May 17, 2007, the NYSDHR found there was "NO PROBABLE CAUSE to believe that the respondent has engaged in or is engaging in the unlawful discriminatory practice complained of." (Docket No. 77-6).   Lindy Korn also represented Plaintiff in the matter.

### III. DISCUSSION AND ANALYSIS

**A.** **Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P 37(d)**

*1.* *Defendant's Arguments in Support of the Motion*

Defendant contends that Plaintiff willfully and deliberately disregarded her discovery obligations. (Docket 55-5).   Moreover, Defendant alleges that Plaintiff's conduct constitutes a deliberate pattern of delay and disregard for court procedures. (Docket No. 55-5).   As a result, Defendant asks this court to dismiss Plaintiff's claim in its entirety pursuant to Fed. R. Civ. Pro. 37(d) or alternatively: (1) prohibit Plaintiff from introducing any evidence in support of her claims; (2) compel Plaintiff to provide complete discovery responses and

appear for deposition; (3) extend the remaining deadlines under the Scheduling Order as appropriate; and/or (4) for such other and further relied as the Court deems just and proper. (Docket No. 69, ¶11).

In opposition to Defendant's motion, Plaintiff argues that she did not understand the exact requirements of the discovery demands. (Docket No. 66).  Plaintiff also argues that her inability to prosecute was attributable to her "lack of technical knowledge of lawful procedure, and the extreme mental and emotional distress [Plaintiff] suffers as a direct consequence of the discrimination and harassment at the hands of agents of the Defendant." (Id.)

## 2. *Motion to Dismiss Standard*

A district court has "wide discretion in imposing sanctions [] and will only be reversed if its decision constitutes an abuse of discretion." Daval Steel Prods, a Div. of Francosteel Corp. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir.1991) (citing Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990), cert. denied, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); John B. Hull, Inc. v. Waterbury Petroleum Prods. Inc., 845 F.2d 1172, 1176 (2d Cir.1988); Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).  Nonetheless, "[D]ismissal under Fed.R.Civ.P. 37 is a drastic penalty which should be imposed only in extreme circumstances." Israel Aircraft Indus., Ltd. v. Standard Precision, 559 F.2d 203, 208 (2d Cir.1977); Indep. Prods. Corp. v. Loew's Inc., 283 F.2d 730, 733 (2d Cir.1960).  In order to constitute such circumstances, a plaintiff's failure to comply must be willful or flagrantly done in bad-faith. Nat'l Hockey League, 427 U.S. at 643.  "Indigent or otherwise disadvantaged (plaintiffs) are afforded a certain degree of leeway in the American court

system, whether in the form of relaxed pleading standards for *pro se* litigants or the waiver of filing fees for those unable to afford them." Tafari v. Hues, 473 F.3d 440, 440 (2d Cir. 2007).  In light of such leeway,  "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, *so long as a warning has been given* that noncompliance can result in dismissal." Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir.1994) (emphasis added).

### 3.     *Plaintiff's Conduct Does Not Warrant Dismissal of her Complaint*

#### i.     *Willful and Deliberate*

Defendant first alleges that Plaintiff's conduct was "willful and deliberate." (Docket No. 55-5).  A plaintiff's failure to respond to discovery requests does not rise to the level of willful when plaintiff's counsel "did not understand the exact requirements of the magistrate's unwritten order compelling discovery." Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1067 (2d Cir.1979).  Similar to the plaintiff in Cine Forty-Second St., Plaintiff in the case at bar contends that she was "extremely confused by Defendant's discovery demand." (Docket No. 66).  This Court has no reason to doubt Plaintiff's representation that she did not understand the discovery requests, and given her *pro se* status, this Court finds that Plaintiff's failure to respond was not willful or deliberate.

#### ii.     *Deliberate Pattern of Delay*

Defendant also alleges that Plaintiff's failure to respond was a "deliberate pattern of delay and disregard for court procedures." (Docket No. 55-5).  In support, Defendant cites Valentine, 29 F.3d at 49-50.  In Valentine, the plaintiff failed to complete his first

deposition and refused to appear for the continuation of the deposition.  The plaintiff argued that the court had no power to order him to attend. Id. at 49.  In response, the plaintiff was specifically warned by the Court that failure to attend the continuation of his deposition would result in dismissal of the action. Id. at 49-50.  Nonetheless, the plaintiff failed to attend and his case was dismissed pursuant to Fed. R.Civ.P. 37 given the plaintiff's "sustained and willful intransigence in the face of repeated and explicit warnings." Id. at 50.

Plaintiff's behavior in the case at bar does not amount to a deliberate pattern of delay as contemplated by Valentine.  In this case, Plaintiff missed one discovery-related deadline and has since hired an attorney to help in the prosecution of the case. Additionally, Plaintiff has not stated her refusal to either submit to this court's authority or to complete her discovery obligations.  Accordingly, this Court finds that Plaintiff's behavior does not constitute a deliberate pattern of delay justifying dismissal.

   *iii.* *Lack of Warning*

Perhaps most importantly, Plaintiff has not been warned by the court that failure to comply with her discovery obligations may result in dismissal.  As the Second Circuit noted, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, *so long as* a warning has been given that noncompliance can result in dismissal." Valentine, 29 F.3d at 50 (emphasis added).  Since Plaintiff, who proceeded *pro se* for the majority of this case, has not been warned that failure to meet discovery deadlines may result in dismissal, this case is not ripe for such dismissal.

iv.    *Nature of the Case*

The case at bar is not the type of case where dismissal under Fed.R.Civ.P. 37 is appropriate.  For example, in <u>Trans World Airlines, Inc. v. Hughes</u>, 332 F.2d 602 (2d Cir. 1964), the conduct of the defendant[2] was "particularly intolerable in a large and complex [anti-trust] litigation," after asserting various counterclaims and then failing to appear for its deposition.  <u>Id.</u> at 615. The court noted the energy and resources consumed by such a complex anti-trust suit. <u>Id.</u>  Moreover, the court found that the defendant's conduct was willful, deliberate, and taken with full knowledge of the sanctions available under Rule 37. <u>Id.</u> at 614.  Here, unlike <u>Trans World Airlines</u>, Plaintiff's conduct is neither willful nor is the case as large and complex.  Dismissal is therefore not warranted.

**4.    *Conclusion***

Accordingly, Defendant's Motion to Dismiss pursuant to Rule 37(d) of the Federal Rules of Civil Procedure is denied.

**B.    Plaintiff's Motion for Leave to File an Amended Complaint**

**1.    *Arguments on the Motion***

Plaintiff alleges that the "proposed amended complaint incorporates new acts, in part, arising from Defendant's acts and omissions, [that] were discovered by Plaintiff on or about October 2007." (Docket No. 68).  Plaintiff alleges that Defendant "will not suffer any prejudice if court [sic] grants this application . . . [because the case is] at the early stage of the litigation." (<u>Id.</u>).

---

[2]The court focused on the conduct of the defendant because the court was evaluating the defendant's prosecution of its counter-claims against the plaintiff.

In opposition to the motion, Defendant argues that granting Plaintiff's motion for leave to amend would be futile and would prejudice Defendant. (Docket No. 76). Additionally, Defendant argues that Plaintiff fails to show "good cause," which is required pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure since Plaintiff failed to comply with the scheduling order (Docket No. 24), which set March 27, 2006, as the deadline for all motions to amend pleadings. (Docket No. 76).

### 2.    Standard for Motion for Leave to Amend Complaint

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend pleadings shall be freely given when justice so requires. Livingston v. Piskor, 215 F.R.D. 84, 85 (W.D.N.Y.2003) (Larimer, J.). However, "there is a difference between freedom and license," CL-Alexanders Laing & Cruickshank v. Goldfeld, 739 F. Supp. 158, 167 (S.D.N.Y. 1990), and the decision of whether to grant leave to amend remains within the court's discretion. John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir.1994) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Denial of motion for leave to amend is reviewed for abuse of discretion. Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir.1993).

Courts generally consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice[3] to the opposing party by virtue of allowance of the amendment, and futility of amendment as grounds for denying the motion to amend. Foman, 371 U.S.

---

[3] "Perhaps the most important factor listed by the Supreme Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." Lyondell-Citgo Refining, LP v. Petroleos De Venezuela S.A., 02-CV-795, 2004 WL 2650884, at *2 (S.D.N.Y. Nov. 22, 2004) (citing 6 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d §§ 1487-88).

178, 182; Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991); John Hancock, 22 F.3d at 462.  In determining what constitutes prejudice, courts generally consider, "whether the assertion of the new claim or defense would: (1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 284 (2d Cir.2000).  Although delay alone is an insufficient basis upon which to deny leave to amend, "[w]here the motion to amend is made after an 'inordinate delay,' a court has the discretion to deny leave of that amendment." Children First Foundation, Inc. v. Martinez, 04-CV-927, 2008 WL 4367338, at *5 (N.D.N.Y. Aug. 3, 2008) (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990)).

### 3. Granting the Motion to Amend the Complaint would Prejudice Defendant

In this case, Plaintiff's excessive, four-year delay would significantly delay the resolution of the dispute, and accordingly, it is not an abuse of this Court's discretion to deny Plaintiff's motion to amend.  See Zahra v. Town of Southold, 48 F.3d 674, 685-686 (2d Cir.1995) (denying leave to amend because undue delay existed where motion to amend was filed 2.5 years after case commenced and three months before trial); NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F.Supp.2d 134, 150-151 (S.D.N.Y.2003) (denying leave to amend pleadings on the ground that, inter alia, (1) the moving party waited nearly two years to seek leave to file an amended Complaint, (2) the amendment would be prejudicial because it was sought after the allowable discovery period and (3) because discovery would have to be reopened for the proposed new defendants); Cuccolo

v. Lipsky, Goodkin & Co., 92-CV-2716, 1994 WL 381596, at *1-2 (S.D.N.Y July 21, 1994)
(denying leave to amend pleading on the grounds that, *inter alia*, (1) such amendment
would require additional discovery after the time for discovery had ended, (2) the motion
was untimely inasmuch as it was made one and one-half years after plaintiffs possessed
information that would have permitted them to seek to amend, and (3) plaintiffs lacked a
satisfactory explanation for the delay); Cramer, 2004 WL 1574691, at *1 (denying leave
to amend when motion was filed two years after the initial complaint).

Courts also consider whether discovery has been completed when making a
determination on undue delay and ultimately, prejudice. Barrows v. Forest Labs., Inc., 742
F.2d 54, 58-59 (2d Cir. 1984) (leave to amend prejudicial where discovery complete and
filed two and one-half years after complaint was filed); CL-Alexanders Laing, 739 F.Supp.
at 166-167 ("When the motion [to amend] is made after discovery has been completed [],
leave to amend is particularly disfavored because of the resultant prejudice to the
defendant."); Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir.1985)
("permitting the proposed amendment would have been especially prejudicial given the fact
that discovery had already been completed [].").  In this case, discovery has been closed
for approximately ten months – since January 31, 20008. (Docket No. 55).  Given this
occurrence, it would be prejudicial to Defendant to allow Plaintiff to now amend her
complaint.

Additionally, if an amended complaint substantially changes the theory of the case
and is proposed late enough so that the defendant is required to engage in significant new
preparation, the court may deem the amended complaint prejudicial. CL-Alexanders Laing,
739 F.Supp. at 166 (denying leave to amend complaint on the grounds that, *inter alia*,

12

plaintiff added ten additional pages of factual material and new claims); <u>Data Digests, Inc.</u> <u>v. Standard & Poor's Corp.</u>, 57 F.R.D. 42, 45 (S.D.N.Y.1972) (denying motion to amend, *inter alia*, where plaintiff proposed adding 17 new defendants, additional claims that went "far beyond the issues presented under the existing complaint," a new round of discovery and pretrial procedure would be required, and considering the "leaden-footed pace with which this case has moved thus far, it can only mean it will take years for the case to be reached for trial."); <u>Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.</u>, 506 F.Supp. 1051, 1054 (D.C.Ill.,1980) (denying motion to amend when the amendment to the complaint "brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint; and where the amendment would require expensive and time-consuming new discovery.").  This Court concludes that Plaintiff's amended complaint substantially changes the theory of the case and is therefore prejudicial given that Plaintiff asserts twenty new causes of action, against five new defendants, and does so in a one hundred and seventy-eight (178) paragraph complaint.

Granting the motion to amend would require Defendant to expend significant additional resources further supporting a finding of prejudice since the Court would have to re-open discovery and dramatically enlarge the scope of the original claim. <u>See</u> <u>Marsh</u> <u>v. Sheriff of Cayuga County</u>, 36 Fed. Appx. 10, at *11 (2d Cir.2002) ("We agree with the magistrate judge that allowing the plaintiff to add additional defendants and new claims based on substantively different theories, three years after the filing of the original complaint, would cause defendants prejudice by requiring them to expend additional resources."); <u>Classicberry Ltd. v. Musicmaker.com, Inc.</u>, 48 Fed. Appx. 360, at *2 (2d Cir.

2002) ("if [two counterclaims] were added [to plaintiffs original breach of contract action], plaintiffs would have had to bear greater litigation costs and the resolution of the case would be delayed."). Although, "the adverse party's burden of undertaking discovery, *standing alone*, does not suffice to warrant denial of a motion to amend a pleading," United States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1255 (2d Cir.1989) (emphasis added), Defendant's burden of re-opening and undertaking discovery does not stand alone in this case since Plaintiff has also excessively delayed, strengthening a finding of prejudice.

Although Plaintiff does not raise her *pro se* status in direct support of her motion to amend, Plaintiff's counsel, Anthony Pendergrass, notes Plaintiff's *pro se* status in a separate context.[4] However, even taking Plaintiff's *pro se* status into consideration for purposes of the present motion to amend, it is not unreasonable for this Court to conclude that this excessive delay is simply inexcusable, especially considering that Plaintiff has retained counsel at various points throughout these proceedings,[5] has presumably sought and obtained advice from such counsel, and is currently represented by counsel in a separate proceeding addressing the same set of facts.[6] See Galet v. Carolace Embroidery Prods. Co., Inc., 91-CV-7991, 1994 WL 542275, at *6 (S.D.N.Y. Oct. 5, 1994) ("[plaintiff's]

---

[4]In Plaintiff's response to Defendant's Motion to Dismiss for failure to prosecute, Plaintiff's counsel argues that Plaintiff's failure to prosecute was attributable to her lack of technical knowledge, confusion, all resulting from her *pro se* status. (Docket No. 66, ¶¶ 5-7).

[5]Charles L. Miller, Esq. was appointed for Plaintiff on April 11, 2006 and served as counsel for Plaintiff until January 30, 2007. Anthony L. Pendergrass, Esq. filed a notice of appearance on May 30, 2008 and remains as counsel for Plaintiff.

[6]Lindy Korn, Esq. currently represents Plaintiff in a proceeding before the New York State Division of Human Rights (NYSDHR). Lindy Korn, Esq. also represented Plaintiff in another proceeding before the NYSDHR.

14

failure to timely pursue these claims borders on the willful, since he has, at various times, consulted, retained and subsequently dismissed a number of attorneys.  I conclude that there is simply no excuse for [plaintiff's] negligent delay, even taking his *pro se* status into consideration.").

Accordingly, this Court finds that granting the motion to amend would prejudice Defendant, Defendant would bear significant additional resources, and Plaintiff's four-year delay is inordinate.  Pursuant to this Court's discretionary authority given such findings, this Court denies Plaintiff's motion for leave to file an amended complaint.

### 4.    Plaintiff Fails to Show Good Cause

Rule 16(b) requires the district court to enter a scheduling order setting deadlines for the parties to, *inter alia*, amend the pleadings.  Fed.R.Civ.P. 16(b).  Rule 16(b) "is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." Lawrence v. Town of Cheektowaga, 04-CV-963, 2006 WL 2000124, at *2 (W.D.N.Y. July 17, 2006) (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 339-40 (2d Cir.2000) (internal citations omitted)). Accordingly, "a person seeking to amend a pleading after the date specified in a scheduling order must first show 'good cause' for the amendment under Rule 16(b)." Id., *2 (quoting Tschantz v. McCann, 160 F.R.D. 568, 571 (N.D.Ind.1995)).  "Good cause means that scheduling deadlines cannot be met despite a party's diligence." Id., at *2 (citing Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y.1997); see also Grochowski v. Phoenix Const., 318 F.3d 80, 86 (2d Cir. 2003) ("[a] finding of good cause depends on the diligence of the moving party.").  The factors to be considered in evaluating good cause

15

are the same factors considered when evaluating a motion for leave to file an amended complaint. <u>Villante v. VanDyke</u>, 93 Fed.Appx. 307, 309 (2d Cir.2004) (citing <u>Parker v. Columbia Pictures Indus.</u>, 204 F.3d 326, 339-40 (2d Cir.2000) ("a court may exercise its discretion to deny an amendment because of the moving party's undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendment, undue prejudice to the opposing party or futility of the amendment.")).

Plaintiff fails to show good cause in accordance with Rule 16(b) of the Federal Rules of Civil Procedure.  Since the factors considered by this Court in evaluating Plaintiff's motion for leave to file an amended complaint were rejected when applying the liberal standard of Rule 15(a), this Court holds that the application of the same factors do not support a finding of good cause, especially when applied against the stricter backdrop of Rule 16(b). <u>See</u> <u>Martin v. MTA Bridges and Tunnels</u>, 06-CV-3125, 2008 WL 2796640, at *1 (S.D.N.Y. July 17, 2008) ("where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'").  Additionally, Plaintiff's prosecution has not exactly been a model of diligence as Plaintiff has missed numerous deadlines.  Therefore, it is unlikely that Plaintiff has broken from this pattern and diligently worked towards complying with the scheduling order.

Accordingly, Plaintiff fails to show good cause pursuant to Rule 16(b) and Plaintiff's motion for leave to file an amended complaint is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Plaintiff's Motion for Leave to File an Amended Complaint are both denied.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 55) and Plaintiff's Motion for Leave to File an Amended Complaint (Docket No. 68) are DENIED.

FURTHER, that this case is referred back to the Honorable Hugh B. Scott, United States Magistrate Judge, for the issuance of a new expedited Scheduling Order for the production of complete discovery responses, for the taking of Plaintiff's deposition, and for extending the remaining deadlines as appropriate.

FURTHER, that Plaintiff is hereby WARNED that failure to comply with the new expedited Scheduling Order may result in dismissal.


Dated:  December 7, 2008
          Buffalo, New York


                                          /s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                          United States District Judge

17